# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CHRISTOPHER C. CAVALLARO, | Civil Action No. 19-10508-FDS |
| Plaintiff, | |
| v. | |
| ARTHUR MENDELSOHN, Trustee of the Pearl Mendelsohn Revocable Living Trust, | |
| Defendant. | |

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION

**SAYLOR, J.**

This case relates to an arbitration proceeding before the Financial Industry Regulatory Authority ("FINRA"), a self-regulatory organization for the financial services sector. Defendant Arthur Mendelsohn, acting as trustee for his mother's living trust, filed a claim against the trust's financial adviser, plaintiff Christopher Cavallaro. The claim asserted, among other things, that Cavallaro had breached his fiduciary duties to the trust and violated FINRA rules. However, FINRA rules require that claims against "associated persons" such as Cavallaro should be arbitrated. Cavallaro brought suit for equitable relief, seeking to enjoin Mendelsohn from arbitrating his claim.

Mendelsohn moved to dismiss the complaint for lack of subject-matter jurisdiction, which the Court granted in a short electronic order. The motion was granted for the following reasons.

I.  **Background**

   A.  **Factual Background**

The facts are set forth as described in the complaint.

Christopher Cavallaro is a Massachusetts resident and was formerly an investment adviser with Lincoln Financial Advisors Corporation, an SEC-registered broker-dealer and FINRA member. (Compl. ¶¶ 5, 10). By virtue of his employment with Lincoln, he was also an "associated person" under FINRA. (*Id.* ¶ 5).

Arthur Mendelsohn is a Massachusetts resident and a long-time client of Cavallaro. (*Id.* ¶¶ 6, 11). He is also the trustee of the Pearl Mendelsohn Revocable Living Trust, the beneficiary of which is his elderly mother, Pearl Mendelsohn. (*Id.* ¶ 7)

In 2015, Arthur created an estate plan for Pearl. (*Id.* ¶ 12). As part of that estate plan, he directed Cavallaro to find an annuity or other structured income product that would yield a regular income to cover his mother's elder-care expenses. (*Id.* ¶ 13). He attempted to secure an annuity from a Lincoln-approved insurance broker called Innovative Insurance Partners ("IIP"), but there was no product available given Pearl's advanced age. (*Id.* ¶ 14). Instead, IIP recommended that the trust purchase a product sold by another entity, Future Income Payments ("FIP"). (*Id.* ¶ 15). The complaint does not say whether FIP was also a Lincoln-approved insurance broker. FIP funded its operations by buying streams of future pension payments from pensioners at a discount. (*Id.* ¶ 16). The FIP product in question was neither an annuity nor any other type of recognized security investment. (*Id.* ¶ 17). It can be inferred from the complaint that the trust purchased the FIP product, which was an unfit investment and caused a substantial loss.

On January 7, 2019, Arthur, on behalf of the trust, filed a FINRA "Statement of Claim"

against Lincoln and Cavallaro for breach of fiduciary duty, negligence, violation of various FINRA rules, and breach of contract. (*Id.* ¶ 18). However, FINRA Rule 12200 requires FINRA members (such as Lincoln) and "associated persons" (such as Cavallaro) "to submit to arbitration to resolve claims brought by customers," so long as "the dispute . . . arises in connection with the 'business activities' of the [FINRA] member or associated person." (*Id.* ¶ 19).

B. **Procedural Background**

The complaint was filed in this action on March 18, 2019, and asserts two claims. Count One asserts a claim for declaratory relief in the form of a court order stating that the trust's claim before FINRA did not arise out of Cavallaro's "business activities" such that arbitration is not binding. (Compl. ¶¶ 28-30). Count Two asserts a claim for injunctive relief seeking to enjoin the trust from bringing its claim before a FINRA arbitration forum. (*Id.* ¶¶ 31-36). Cavallaro filed a separate motion for a preliminary injunction seeking the same equitable relief, also on March 18, 2019. Two days later, on March 20, 2019, Lincoln Financial Advisors Corporation filed a motion to intervene as a plaintiff.

Defendant moved to dismiss the complaint for lack of subject-matter jurisdiction on April 2, 2019. The Court granted the motion to dismiss after a hearing on April 9, 2019, and stated that it would issue a memorandum and order setting forth its reasoning at a later date.

II. **Legal Standard**

On a motion to dismiss, the court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the "[f]actual

3

allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

### III. <u>Analysis</u>

Defendant moved to dismiss the complaint for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). The parties agree that there is no diversity jurisdiction because the parties are Massachusetts citizens. Rather, the complaint asserts that federal-question subject-matter jurisdiction exists "because this case relates to an arbitration governed by the Federal Arbitration Act . . . in which defendant alleges violations of federal law relating to a transaction in interstate commerce." (Compl. ¶ 2).

However, the Federal Arbitration Act does not provide a basis for federal jurisdiction; instead, an independent jurisdictional basis is required. *See Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581-82 (2008) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983)); *see also* 9 U.S.C. § 4 (specifying that federal district courts have jurisdiction in an action under the Federal Arbitration Act only where there is an independent basis for jurisdiction under title 28). Stated another way, "federal question jurisdiction over controversies involving arbitration cannot be based on the fact that the [Federal

4

Arbitration Act] establishes the relevant substantive law." *Ortiz-Espinosa v. BBVA Sec. of P.R., Inc.*¸ 852 F.3d 36, 45 (1st Cir. 2017).

Here, the complaint merely alleges that this case "relates to an arbitration governed by the Federal Arbitration Act." That is plainly insufficient to invoke federal-question subject-matter jurisdiction.

In his opposition, plaintiff makes a variety of arguments, none of which are persuasive. First, he invokes the Federal Rules of Civil Procedure, contending that because he is seeking declaratory judgment under Rule 57 and injunctive relief under Rule 65, there is a federal question. That is plainly incorrect. "The Federal Rules cannot widen the jurisdiction of [federal district courts], they may only prescribe the methods by which that jurisdiction is to be exercised." *Cramp Shipbuilding Co. v. United States*, 11 F.R.D. 556, 557 (E.D. Pa. 1951) (remanded on other grounds in *Cramp Shipbuilding Co. v. United States*, 193 F.2d 469 (3d Cir. 1952)). Similarly, his reliance on 28 U.S.C. § 2201, which grants district courts the power to issue declaratory judgments, is misplaced because that statute is applicable only "[i]n a case of actual controversy *within [their] jurisdiction*." (emphasis added). Where, as here, there is no independent basis for subject-matter jurisdiction, a district court cannot grant declaratory relief.

Second, because FINRA was created by Congress, plaintiff reasons that all FINRA proceedings involving an alleged breach of FINRA rules necessarily rely on federal law. However, "[a] breach of FINRA rules 'is simply a breach of a private association's rules, although that association is one which is closely related to the SEC . . . and therefore does not present a question which arises under the laws of the United States.'" *Janus Distrib. LLC v. Roberts*, 2017 WL 1788374, at *4 (D. Colo. May 5, 2017) (quoting *Apollo Prop. Partners, LLC v. Newedge Fin., Inc.*, 2009 WL 778108, at *2 (S.D. Tex. Mar. 20, 2009)); *see also Ford v.*

5

*Hamilton Invs., Inc.*, 29 F.3d 255, 259 (6th Cir. 1994) ("A breach of the [FINRA] rules does not present a question that arises under the laws of the United States within the meaning of 28 U.S.C. § 1331.").

Finally, plaintiff contends that he never entered into an arbitration agreement with defendant, and that "[t]he question of arbitrability is for th[is] Court to decide" because "arbitration is a matter of contract." (Mem. in Opp. at 7).[1] However, the mere fact that plaintiff disputes the existence of an arbitration agreement does not vest this Court with subject-matter jurisdiction.

## IV. Conclusion

For the foregoing reasons, defendant's motion to dismiss is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Dated: May 9, 2019						United States District Judge

---

[1] Presumably, plaintiff consented to arbitration when he became a registered representative and "associated person" of Lincoln, a SEC broker-dealer and FINRA member. FINRA Rule 12200 states as follows:

Parties must arbitrate a dispute under the [FINRA] Code [of Arbitration Procedure] if:
- Arbitration under the Code is either:
  (1) Required by a written agreement, or
  (2) Requested by the customer;
- The dispute is between a customer and a member or associated person of a member; and
- The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

The complaint establishes that defendant requested arbitration and that the dispute was between a customer and "associated person of a member." Moreover, because the dispute centers on plaintiff's purported investment recommendation that the trust purchase a FIP product, the dispute is likely related to "the business activities of the . . . associated person."